MR. JUSTICE HUNT,
concurring:
I concur in the result reached by the majority, but cannot agree with its analysis of the constitutional challenge raised by appellants.
The majority reaches its decision without addressing appellant’s claim that Section 71-3-1203, MCA, is unconstitutional as violative of due process. Appellants first raised the issue in their initial complaint before the District Court. They gave notice to this Court of the constitutional challenge in compliance with Rule 38 M.R.App.Civ.P. Appellants have standing to challenge the statute. I cannot agree with the majority opinion that it is unnecessary to decide whether Section 71-3-1203, MCA, is constitutional. The issue is squarely before us and cannot be ignored.
I would hold that Section 71-3-1203, MCA, is clearly unconstitutional. The statute violates the due process clauses of the state and federal constitutions. However, I concur in the affirmance of the District Court’s decision because the appellants have already had their hearing. Following the sale, the appellants brought an action in the District Court which they litigated to a final judgment, and from which they now appeal. They received the full benefits of a trial in which they had an opportunity to fully present their case. The District Court found in favor of the respondents. Therefore, it is unnecessary to reverse the District Court and remand this case for a hearing.
*21 The agister’s lien statute is clearly unconstitutional, however, because there is significant state action involved, and because the statute provides neither notice nor an opportunity to be heard prior to deprivation of property.
First, it is clear there is significant state action involved. The Third Circuit Court of Appeals found state action from the mere enactment of a statute authorizing a garageman to sell a customer’s vehicle for nonpayment of a bill. Parks v. Mr. Ford (3d Cir. 1977), 566 F.2d 132. The state action under Section 71-3-1203, MCA, is far more significant. The sheriff is given a copy of the bill, a description of the property, and the name of the owner. The sheriff then must advertise and conduct the sale, he applies the proceeds of the sale to the debt, and provides the buyer with a bill of sale. Clearly this constitutes significant state action.
Second, the statute does not satisfy the minimum due process requirement elaborated by either the Montana or the United States Supreme Court. As this Court stated in Nygard v. Hillstead and Coyle (1979), 180 Mont. 524, 528-529, 591 P.2d 643, 645:
“It is fundamental that “[n]o person shall be deprived of life, liberty, or property without due process of law.” 1972 Mont. Const. Art. II, Section 17. “ ‘It is well settled that notice and opportunity to be heard are essential elements of Due Process.’ ” Halldorson v. Halldorson (1977), 175 Mont. 170, 573 P.2d 169, 171.”
The United States Supreme Court has addressed the due process requirement in the area of garnishment, replevin, and sequestration. That line of cases includes Sniadach v. Family Finance Corp. (1983), 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349; Fuentes v. Shevin (1972), 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556; Mitchell v. W.T. Grant Co. (1974), 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406, and North Georgia Finishing Co. v. Dichem, Inc. (1975), 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751.
In Sniadach, it was held that the Wisconsin prejudgment garnishment procedure whereby the defendant’s wages were frozen in the interim between the garnishment and the culmination of the main suit, without the opportunity for a hearing, violated the Fourteenth Amendment. The Court noted that wages were a specialized type of property and prejudgment garnishment might impose tremendous hardship on wage earners. The Sniadach holding was expanded by Fuentes. In Fuentes, Florida and Pennsylvania statutes were held unconstitutional. Those statutes authorized the issuance of writs ordering state agents to seize a person’s possessions upon the ex parte *22 application of any other person who claimed a right to them and posted a security bond, without providing the possessor with notice or an opportunity to be heard. The Court held that a person whose rights are to be affected is entitled to be heard at a meaningful time and in a meaningful manner, and that the replevin statutes in question were constitutionally defective in failing to provide for notice and hearing. The Court noted that “extraordinary situations” may justify the lack of notice and hearing, but such a situation did not exist in that case.
Fuentes was distinguished by Mitchell wherein it was held that a Louisiana statute which permitted the seller of goods under an installment contract to obtain a writ of sequestration to recover the goods, upon buyer’s default, and without notice or hearing, did not violate due process. There were other adequate safeguards of due process because the writ would issue only upon a verified affidavit, and upon a judge’s authority after the creditor had filed a sufficient bond. The statute entitled the debtor to immediately seek dissolution of the writ unless the creditor proved the grounds upon which the writ issued, and the debtor could regain possession by posting a bond to protect the seller.
The final case is North Georgia Finishing, Inc.. That case relied upon Fuentes to determine that Georgia statutes authorizing garnishment of property other than wages in pending suits, but not providing for notice, hearing, or participation by a judicial officer, violated due process.
The above cases dealt with something less than a sale of the property, i.e., sequestration, replevin, and garnishment. Clearly a permanent deprivation of property, such as occurs in a sale, warrants just as stringent a due process analysis as lesser forms of deprivation. As those cases indicate, due process requires at a minimum both notice and an opportunity to be heard prior to deprivation of property absent extraordinary circumstances, or other sufficient safeguards of due process.
Section 71-3-1203, MCA, does not provide the kind of safeguards which salvaged the Louisiana statute in Mitchell. There is no requirement for a verified affidavit, no participation by a judge, no mandatory bond, and no procedure to seek an immediate halt of the sale. Further, there are no other legal remedies available to sufficiently guarantee due process. The legal procedures available to the owner, such as the institution of an action for conversion or for declaratory relief, are insufficient substitutes for a pre-sale hearing. *23 There is little probability that trial of a contested lien claim can be held within the minimum period preceding transfer to the buyer, and injunctions or other extraordinary remedies are discretionary with the trial court and thus lack the certainty necessary to insure a hearing prior to permanent deprivation.
The question then becomes whether there exists any extraordinary circumstances which would justify the lack of a hearing prior to the sale. The respondent, Schafer, argues that because the personalty involved was live animals, this constitutes an extraordinary circumstance. This argument is not persuasive. The United States Supreme Court in Fuentes discussed what is meant by “extraordinary situations.” As that Court said:
“These situations, however, must be truly unusual .... First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a governmental official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.”
Fuentes, 407 U.S. at 90-91, 92 S.Ct. at 1999.
Thus, the Court has allowed summary seizure to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, or to protect the public from misbranded drugs and contaminated food. The present situation does not qualify as an important governmental interest. It is a private dispute between two parties. State intervention in a private dispute hardly compares to state action furthering a war effort or protecting the public health, and is of insufficient importance to override the due process requirements of notice and hearing. Therefore, I would hold that Section 71-3-1203, MCA, is violative of due process as there is no provision for notice and hearing prior to deprivation of property.
The question remains what kind of notice and hearing satisfy due process requirements? The Supreme Court in Fuentes stated that notice must be granted at a meaningful time and in a meaningful manner. Fuentes, 407 U.S. at 80, 92 S.Ct. at 1994. Further, the Court noted that leeway remains to develop a form of hearing that will minimize unnecessary cost and delay while preserving the fairness and effectiveness of the hearing in preventing seizures of goods *24 where the party seeking the seizure has little probability of succeeding on the merits. Sniadach, 395 U.S. at 343, 89 S.Ct. at 1823.
The hearing should establish the validity, or at least the probable validity, of the underlying claim before an alleged debtor can be deprived of his property. Consideration should be given to the interests of the parties including the basis of the underlying claim, the nature of the property involved, i.e., its value, uniqueness, etc., and the need for prompt action. The hearing need not be a full blown trial-type hearing, but must protect a property owner’s use and possession of property from arbitrary encroachment. This is an especially relevant danger where the State seizes and sells goods merely upon the application of a private party.
Because the appellants have properly challenged the constitutionality of Section 71-3-1203, MCA, the issue must be addressed. However, I concur in the result reached by the majority and would affirm the District Court in all respects.
I concur.