No. 13756

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

ARTHUR G. NYGARD and ARLENE NYGARD,

        Plaintiffs and Respondents,

-vs-

WAYNE A. HILLSTEAD, BETTY L. HILLSTEAD
and JERRIE H. COYLE,

        Defendants and Appellants.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Edward Dussault, Judge presiding.

Counsel of Record:

    For Appellants:

        Murray and Holt, Missoula, Montana
        Harold Holt argued, Missoula, Montana
        Goldman & McChesney, Missoula, Montana

    For Respondents:

        Mulroney, Delaney, Dalby and Mudd, Missoula, Montana
        Dexter Delaney argued, Missoula, Montana

---

Submitted:   September 14, 1978

Decided: MAR 7 - 1979

Filed: MAR 7 - 1979

*Thomas J. Kearney*
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Wayne A. and Betty L. Hillstead, defendants, appeal from a District Court judgment which directed the parties to the action to sell certain Seeley Lake real property and divide the proceeds equally between them.

Several issues are raised in this appeal, but the dispositive issue is our conclusion that the defendants were denied due process of law because the trial court prematurely terminated the trial without giving the defendants an opportunity to present further testimony and documentary evidence.

A summary of the facts leading to this litigation, as well as a summary of the proceedings in the trial court follows.

The events which led to this appeal began in December 1972, when Wayne A. Hillstead, Betty L. Hillstead, Arthur G. Nygard and Arlene J. Nygard formed a verbal partnership for the express purpose of purchasing and operating the Seeley Lake Inn. When the Hillstead-Nygard partnership was formed, the Seeley Lake Inn was being operated by Stewart and Marilyn Rose. The Roses' claimed title to the Inn under a contract for deed entered into with Jerrie Coyle, the record owner of the Inn.

On December 19, 1972, the Roses' assigned all their rights under the Coyle-Rose contract for deed to the Nygard-Hillstead partnership. Thereafter, on or about December 22, 1972, the partnership took physical possession of the Seeley Lake Inn.

The partnership operated the Inn from December 22, 1972 until April 15, 1973. On the latter date, "unhappy differences" caused the Nygards' to leave Seeley Lake on an extended trip

-2-

to North Dakota.  The Hillsteads remained in Seeley Lake and continued to operate the Inn.

On July 10, 1973, the Nygards instituted an action in the District Court, Missoula County, seeking a dissolution of the partnership and a public sale of the partnership's assets.  Nygards' complaint alleged that they had been forced to leave Seeley Lake because of "unhappy differences" between the partners, particularly, Wayne L. Hillstead.

The Hillsteads filed various responsive pleadings, including an amended answer and counterclaim.  The amended answer claimed the Nygards had not been ousted from the Inn, but had abandoned the premises of their own volition.  The counterclaim sought reimbursement for the Hillsteads for one-half of all the Inn expenses paid after April 15, 1973.

The case was set for trial on June 28, 1976, before the Hon. Edward T. Dussault, sitting without a jury.  The trial lasted one day, with the following judgment being entered against the Hillsteads on December 30, 1976:

> "1.  That the partnership relationship between the Nygards and the Hillsteads be adjudged as being terminated as of April 15, 1973.
>
> "2.  That the Hillsteads provide the Nygards with an accounting of the sale of personal property, equipment and fixtures which the parties purchased jointly from the Roses.
>
> "3.  That the Plaintiffs Nygards be entitled to a Judgment against the Defendants Hillsteads partitioning said property, requiring the same to be sold at Sheriff's Sale to the highest bidder, and, after the parties have been reimbursed for those sums of money expended by them in connection with the payment of partnership obligations between December 19, 1972, and April 15, 1973, and the Plaintiffs credited to the extent of their interest in the personal property sold by the Defendants, the proceeds thereof be equally divided between the Nygards and the Hillsteads.
>
> "4.  That the Hillsteads be entitled to take nothing by virtue of their affirmative defenses or cross-complaint against the Nygards."

After the adverse judgment in the District Court, defendants substituted their counsel and prosecuted this appeal. The thrust of defendants' argument on appeal is that the District Court prematurely terminated the June 28th trial and thereby deprived them of the opportunity to present their case to the finder of fact. The transcript reveals the following occurrences.

Betty L. Hillstead was the only witness allowed to testify on behalf of the defendants. During her testimony, her attorney was laying a foundation for the introduction of a number of defense exhibits; but, her testimony was interrupted when plaintiffs' counsel objected to all of the defense exhibits. The trial judge decided to take plaintiffs' objection under advisement. He stated he would review the proposed exhibits during the noon hour and render a decision on their admissibility immediately after lunch. The court then recessed for a ninety-minute lunch break.

When the court reconvened at 1:30 p.m., the trial judge held a short meeting in his chambers with both opposing counsel. Thereafter, the judge returned to open court and made the following statement:

> "THE COURT: For the record, and so the clients will know, we retired to the office of the Court Reporter to at least try to iron out what law governs the situation in this case, and I told the parties what I felt that the Uniform Joint Partnership Act controlled in this case, and as a result, I'm not so sure just what counsel for the Defendants Hillstead feels, but the Court feels that, and has ruled as a matter of record, that the partnership actually was dissolved as of April fifteenth, 1973, and from that date on the remaining partner who stayed in the business did so at his peril. In other words, if he expended any money in the hopes of making money or borrowed money in the hopes of making the business flourish, which it did -- I know of my own knowledge at one time under the original owner that

he did so, and they did so at their own peril. The Court will admit the notes which were offered in evidence with the exception of L which was not offered - Defendants' Exhibit L."

After this statement was made, an extended discussion took place between the court and opposing counsel. The bulk of this discussion seems to be an attempt to clarify exactly what the trial judge had decided. At one point, the following exchange took place:

"THE COURT: I think both counsel know exactly what we're talking about.

"[PLAINTIFFS' COUNSEL] . . . Shall we prepare proposed findings?

"THE COURT: Yes, if you will. I would appreciate your preparing findings, and I am just saying this -- I was trying to shorten the record for you in case you didn't like the way I interpret the law, so if you want to take an appeal it would cost you less, and I know nobody can say 'anybody,' but I think I can read the law and we've had two or three cases exactly in point regarding this type of partition or dissolution. If it cannot be partitioned, then it would have to be sold." (Emphasis added.)

Betty Hillstead never returned to the witness stand. Wayne Hillstead, who was scheduled to testify in his own behalf, was never given the opportunity to take the stand. The District Court simply ruled the trial was complete and findings and conclusions should be submitted.

After the court announced its ruling, defendants' counsel made the following objection to the termination of the proceedings:

"[DEFENDANTS' COUNSEL] . . . Would you hold the floor a minute, Judge? May we have a few minutes to think about this, Judge?

"THE COURT: Sure.

"[DEFENDANTS' COUNSEL] . . . Your Honor, at this time I would like to lay a foundation for appeal, if it's all right with the Court.

"THE COURT: Sure.

-5-

"[DEFENDANTS' COUNSEL] . . . That the
Defendant, or Defendants, rather, have been
barred from introducing any evidence of the
conduct of the Plaintiffs and their abandon-
ment of the premises.  That further we were
barred from introducing the income tax returns
for the years '74 and '75, made by the
accountant for the partnership.  This is only
part of the basis of our appeal.  This is no
reflection upon the Court, Your Honor; merely
was to make this of the record.  I also want
to make, for the record, or state for the
record, that the parties without a statement
of an indemnification, refuse to sign the
liquor and beer licenses.  Is that correct,
Mr. Delaney?"

It is fundamental that "[n]o person shall be deprived
of life, liberty, or property without due process of law."
1972 Mont. Const. Art. II, §17.  "It is well settled that
notice and opportunity to be heard are essential elements
of Due Process".  Halldorson v. Halldorson (1977), _____ Mont.
_____, 573 P.2d 169, 171, 34 St.Rep. 1553, 1555.  As we
also stated in Halldorson:

". . . [W]e believe that appellate courts
have a duty to determine whether the
parties before them have been denied
substantial justice by the trial court,
and when that has occurred we can, within
our sound discretion, consider whether
the trial court has deprived a litigant
of a fair and impartial trial, even though
no objection was made to the conduct during
the trial." (Emphasis added.)  573 P.2d at 172.

Our review of the District Court record convinces us
that the defendants were not given an adequate opportunity
to present their side of the case.  They were denied substantial
justice.  Accordingly, they are entitled to a new trial.

Since the case must be retried, we feel it is incumbent
on this Court to offer some suggestions to avoid further
confusion and delays.  First, we note that this action was
tried without the benefit of discovery or pretrial conference.
We strongly recommend holding a formal pretrial conference
to simplify the issues and formulate the contentions of the
parties.  Such a procedure expedites the trial and is valuable
for this Court if a subsequent review becomes necessary.

-6-

We also note that there was some dispute over the applicability of Montana's Uniform Partnership Act.  The parties now concede that the act applies, but disagree as to the applicable sections.  The pretrial conference will afford the litigants an opportunity to present their arguments to the court prior to the trial date.  This procedure will allow the court to make an informed decision as to which section of the act should be applied.

For the foregoing reasons, the case is remanded to the District Court for a new trial.

_____
                        Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
            Justices