No. 98-077

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 288

297 Mont. 33

991 P.2d 915

FEDERATED MUTUAL INSURANCE COMPANY,

Plaintiff,

v.

BRENT ANDERSON, d/b/a CONIFER LOGGING,

Defendant, Third-Party Plaintiff, and Appellant,

v.

JONES EQUIPMENT, INC., and JOHN DEERE

INSURANCE COMPANY,

Third-Party Defendants, Respondents, and Cross-Appellants.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas J. Beers and Matthew O. Clifford, Beers Law Office;

Missoula, Montana

Michael G. Alterowitz, Alterowitz Law Offices, P.C.; Missoula, Montana

For Respondents:

Shelton C. Williams, Williams & Ranney, P.C.; Missoula, Montana

---

Submitted on Briefs: September 10, 1998

Decided: November 23, 1999

Filed:

---

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶ Federated Mutual Insurance Company filed a complaint in the District Court for the Fourth Judicial District in Missoula County in which it sought to recover from Conifer Logging, Inc., amounts Federated had paid to its insured, Jones Equipment, Inc., for the loss of logging equipment Jones leased to Conifer. Conifer filed a third-party complaint against John Deere Insurance Company in which it sought indemnity for any amounts which it might owe Federated. As a result of John Deere's first appeal to this Court, *Federated Mutual Insurance Co. v. Anderson*

(1996), 277 Mont. 134, 920 P.2d 97, we affirmed the District Court's award of partial summary judgment in favor of Conifer and imposed Rule 32 sanctions against John Deere for its frivolous appeal. After this case was remanded, Conifer amended its complaint to allege unfair trade practices. The District Court awarded partial summary judgment in favor of Conifer on the issue of liability for the amended claim; however, following a jury trial, entered judgment in favor of John Deere on all remaining issues. Conifer appeals the judgment of the District Court and John Deere cross-appeals from the entry of summary judgment. We affirm the award of summary judgment, and reverse the judgment in favor of John Deere.

¶ The issues on appeal and cross-appeal are:

¶ 1. Did the District Court err when it refused to allow Conifer to include John Deere's conduct on appeal as part of its unfair trade practices action?

¶ 2. Is there sufficient evidence in the record to support the jury's verdict that malice had not been proven?

¶ 3. Did the District Court err by allowing John Deere to make inappropriate comments to the jury?

¶ 4. Did the District Court err when it refused to give Conifer's proposed law of the case instruction and allowed John Deere to present a defense contrary to the law of the case?

¶ 5. Did the District Court err when it awarded summary judgment in favor of Conifer on the issue of Deere's liability and instructed the jury that Deere had acted "unreasonably"?

¶ 6. Did the District Court err when it excluded the testimony of Deere's expert witnesses?

¶ 7. Did the District Court err when it allowed Conifer to amend its complaint to include an unfair trade practices claim after the expiration of the statute of limitations?

¶ 8. Did the District Court err when it admitted evidence of acts which occurred more than two years prior to the commencement of the Plaintiff's action?

## FACTUAL BACKGROUND

¶ These same parties were before this Court on appeal in *Federated Mutual v. Anderson* (1996), 277 Mont. 134, 920 P.2d 97 ("*Federated Mutual I*"). In that case, Conifer had sued John Deere for indemnity from claims made against it by Federated Mutual. In *Federated Mutual I* we set forth the facts which gave rise to the original complaint as follows:

On May 29, 1991, Conifer Logging agreed to lease a 1987 Timberjack feller buncher from Jones Equipment Company. The feller buncher, which is a vehicle that cuts and stacks standing timber, was worth $130,000. The term of the lease was one to six months with an option to purchase the equipment. Before the lease began, Conifer was entitled to a free, one_week trial period without obligation or risk. The one_week trial period was reflected in the original option to purchase, which stated that although delivery was scheduled for June 10, the first rental payment was not due until June 17 and the six_month term of the lease did not expire until six months and one week after delivery on December 17, 1991.

Jones was unable to deliver the feller buncher to Conifer's logging site on June 10, and delayed delivery until June 17. As a result, Jones prepared a revised lease agreement and option to purchase and drafted an equipment rental agreement. The revised documents reflected the fact that Conifer was entitled to a one_week free trial period and stated that the delivery date was June 17, the first payment was due on June 24, and the option had to be exercised or the feller buncher returned to Jones by December 24, 1991.

During the one_week free trial period Conifer had no contractual obligations regarding the feller buncher, and did not assume the risk of loss. Jones was liable for any damage to the equipment during that period. Once the lease commenced, however, Conifer became responsible for any damage to the feller buncher and was obligated to provide insurance coverage for it. The lease commenced on June 24, 1991, when Conifer kept the feller buncher and made its first lease payment.

In June and early July 1991, Conifer discovered serious problems with the feller buncher and decided to terminate the lease. On July 16, 1991, Conifer contacted an equipment hauler to have the feller buncher shipped back to Jones. On July 17, 1991, however, the feller buncher caught on fire and was destroyed on Conifer's logging site. Conifer notified John Deere Insurance Company of the loss on July 18, 1991.

At the time of the lease, Conifer's logging equipment was insured by John Deere Insurance Company pursuant to the terms of a "contractor's inland marine policy." That policy included a "newly acquired property" provision which provided automatic coverage for any similar property acquired by Conifer during the term of its policy provided that Conifer reported the acquisition of such property and paid an

additional premium on the property within thirty days from the date on which the property was acquired.

After the destruction of the feller buncher, Federated Mutual Insurance Company paid Jones Equipment for the loss and then sued Conifer Logging for indemnification. In turn, Conifer filed a third_party complaint against John Deere Insurance Company in which it alleged that the feller buncher was insured pursuant to its policy with John Deere. Conifer maintained that pursuant to the newly acquired property provision in that policy John Deere was required to indemnify Conifer for the full amount of any judgment recovered by Federated.

John Deere moved for summary judgment on January 31, 1995. In support of its motion, it maintained that the feller buncher was never insured by John Deere because the loss occurred before Conifer had notified John Deere of its acquisition of the property and after the thirty_day notice requirement of the "newly acquired property" provision had expired. Conifer filed a cross_motion for summary judgment in which it asserted three grounds for coverage. First, Conifer maintained that using the usual methods of computation of time, the thirty_day grace period began on June 18, the day after Conifer's receipt of the equipment, and that therefore the fire on July 17 occurred within the thirty_day automatic coverage period. Second, Conifer maintained that because it had a one_week free trial period without obligation or risk, Conifer did not "acquire" the feller buncher pursuant to the newly acquired property clause until June 24, 1991, and its loss on July 17, 1991, was well within the thirty_day period for automatic coverage. Finally, Conifer maintained that John Deere's inconsistent interpretation of the language of its own newly acquired property clause established the provisions' ambiguity and required the court to interpret the clause in favor of coverage as a matter of law.

On May 30, 1995, the Fourth Judicial District Court issued an opinion and order. In its order, the court denied John Deere's motion for summary judgment and granted Conifer's cross_motion for summary judgment. The court concluded that the feller buncher "was covered by [John] Deere's policy under each of Conifer's theories."

*Federated Mutual I*, 277 Mont at 136-38, 920 P.2d at 99-100.

12. ¶ On appeal, we concluded that:

[T]he uncontroverted facts establish that although the feller buncher was delivered on June 17, 1991, Conifer's lease of the machinery was delayed by the one_week free trial period and did not start until June 24, 1991. Because neither Conifer nor Jones intended any ownership interest or risk of loss for the feller buncher to pass to Conifer until the lease commenced, we hold that Conifer did not "acquire" the feller buncher pursuant to the newly acquired property provision of its lease with John Deere until June 24, 1991. Therefore, we conclude that the destruction of the feller buncher on July 17, 1991, and Conifer's notice to John Deere of the loss on July 18, 1991, were within the thirty_day period of automatic coverage provided by Conifer's policy with John Deere. For these reasons, we affirm the District Court's order which denied John Deere's motion for summary judgment and granted Conifer's cross_motion for summary judgment.

*Federated Mutual I*, 277 Mont. at 142, 920 P.2d at 102. We further concluded that John Deere's appeal was without merit, and assessed sanctions against John Deere pursuant to Rule 32, M.R.App.P. *See Federated Mutual I*, 277 Mont. at 145, 920 P.2d at 104.

13. ¶ On remand, Conifer moved to amend its complaint to include a Montana Unfair Trade Practices Act (hereafter "MUTPA") claim based on both John Deere's prelitigation actions and its conduct during litigation. The District Court allowed the amendment with respect to the prelitigation actions only. Following Conifer's motion for summary judgment, the District Court concluded that John Deere's conduct was unreasonable as a matter of law. The case was tried to a jury, which was asked to decide whether John Deere had acted with actual malice when it handled Conifer's claim. The jury found in favor of John Deere, and this appeal ensued.

CONIFER'S APPEAL

ISSUE 1

14. ¶ Did the District Court err when it refused to allow Conifer to include John Deere's conduct on appeal as part of its unfair trade practices action?

15. ¶ Conifer contends that when an insurer continues to deny coverage after a judicial finding that the coverage existed and files a meritless appeal in support of its denial, the insurer violates the plain language of the MUTPA. Therefore, it argues, the

District Court abused its discretion when it refused to allow Conifer to amend its complaint to include John Deere's "post litigation" conduct.

16. ¶ John Deere contends that the District Court did not abuse its discretion because the proposed amendment was untimely, and because this Court's prior decision in *Federated Mutual I* did not create a new cause of action in this case.

17. ¶ We review a district court's denial of a motion to amend the pleadings to determine whether the district court abused its discretion. *See Porter v. Galarneau* (1996), 275 Mont. 174, 188, 911 P.2d 1143, 1151_52 (citation omitted).

18. ¶ Rule 15(a), M.R.Civ.P. provides in pertinent part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires.*

(Emphasis added.)

19. ¶ Rule 15(a), M.R.Civ.P., provides for liberal amendment of pleadings but does not require amendments to be allowed in all instances.

While the rule favors allowing amendments, a trial court is justified in denying a motion for an apparent reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by allowance of the amendment, futility of the amendment, etc.

*Lindey's, Inc. v. Professional Consultants, Inc.* (1990), 244 Mont. 238, 242, 797 P.2d 920, 923 (citations omitted).

20. ¶ John Deere cites our decision in *Lindey's* for the principle that a trial court is "well within its discretion" to deny a motion to amend after the deadline for amendments has expired. In *Lindey's*, we concluded that the district court did not abuse its discretion when it denied motions to amend the pleadings two months after the date the deadline had passed, because the appellant made no showing that good cause

existed for its failure to submit timely motions to amend, and all defendants would have been prejudiced by unnecessary expenditures of time, energy, and money to resolve the case. *See Lindey's,* 244 Mont. at 242-43, 797 P.2d at 923.

21. ¶ John Deer also cites to *Peuse v. Malkuch* (1996), 275 Mont. 221, 911 P.2d 1153, for the principle that a motion to amend pleadings should be denied where the parties have already moved for summary judgment. In *Peuse*, the appellant sought to amend the pleadings two years after the original pleadings had been filed. We concluded that "[i]f the amendments were allowed after the motion for summary judgment, [the respondent] would be unduly prejudiced since his motion was based on the original pleadings which remained unchanged for almost two years. Litigants should be allowed to change legal theories after a motion for summary judgment has been filed only in extraordinary cases." *Peuse*, 275 Mont. at 228, 911 P.2d at 1157.

22. ¶ In this case, the pleadings had been closed by scheduling order of the District Court for more than one year at the time Conifer sought to amend the complaint, and motions for summary judgment had been made, ruled on, and appealed from. However, this is precisely the "extraordinary case" contemplated by the language in *Peuse*. John Deere's meritless appeal, on which Conifer sought to base its amendment, did not occur until after the pleadings were closed and after summary judgment. It would be difficult to imagine how Conifer could have made the amendment to the pleadings, prior to our decision in *Federated Mutual I*. The timing of Conifer's motion to amend was not the result of any delay, bad faith, or dilatory motive on its part. Nor was John Deere unduly prejudiced by the postsummary judgment timing of the amendment, because the only issue decided by summary judgment at that point was whether the feller buncher was covered by John Deere's policy and the amendment was not relevant to resolution of that motion. Therefore, we conclude that Conifer's motion to amend the pleadings was not untimely.

23. ¶ The MUTPA requires insurers to "attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Section 33-18-201(6), MCA. A violation of this provision gives rise to an independent cause of action pursuant to § 33-18-242, MCA. The commencement of a lawsuit by the insured does not end an insurer's duties to the insured. *See Palmer v. Farmers Ins. Exch.* (1993), 261 Mont. 91, 121, 861 P.2d 895, 913. Therefore, the continuing duty of good faith can be breached by an insurer's postfiling conduct. This includes the actions of attorneys conducting the defense of the insurer as its agents. *See Safeco Ins. Co. v. Ellinghouse* (1986), 223 Mont. 239, 252_53, 725 P.2d 217, 225-26.

24. ¶ However, we have previously held, in accord with other jurisdictions, that the

continuing duty of good faith does not necessarily render evidence of an insurer's postfiling conduct admissible. *See Palmer*, 261 Mont. at 121, 861 P.2d at 913-14 (and cases cited therein). Public policy favors the exclusion of such evidence under normal circumstances because it can hinder the right to defend and can impair access to the courts; therefore, courts must use extreme caution in deciding to admit such evidence even if relevant. *See Palmer*, 261 Mont. at 121-23, 861 P.2d at 914-15.

An attorney in litigation is ethically bound to represent the client zealously within the framework provided by statutes and the Rules of Civil Procedure. These procedural rules define clear boundaries of litigation conduct. If a defense attorney exceeds the boundaries, the judge can strike the answer and enter judgment for the plaintiff, enter summary judgment for the plaintiff, or impose sanctions on the attorney. There is no need to penalize insurers when their attorneys represent them zealously *within the bounds of litigation conduct*. To allow a jury to find that an insurer acted in bad faith by zealously defending itself is to impose such a penalty.

*Palmer*, 261 Mont. at 121, 861 P.2d at 914 (citations omitted) (emphasis added).

25. ¶ Generally, an insurer's litigation tactics and strategy for defending a claim are not relevant to the decision to deny coverage. The trial court should weigh the probative value of the evidence against the inherently high prejudicial effect of such evidence, keeping in mind the insurer's fundamental right to defend itself. *See Palmer*, 261 Mont. at 123, 861 P.2d at 915.

26. ¶ In *Palmer*, the district court admitted evidence of the appellant's postfiling conduct in support of the respondent's bad faith claim, which allowed the respondent to imply to the jury that the appellant's counsel had behaved improperly and unethically in the underlying trial. However, the majority of this Court concluded that appellant's counsel had done nothing more than zealously and ethically represent the interests of the client. This Court concluded that the prejudicial nature of the testimony far outweighed the relevance of the appellant's legitimate litigation conduct and reversed the district court. *See Palmer*, 261 Mont. at 124, 861 P.2d at 916.

27. ¶ In this case, the District Court concluded that the uncontroverted facts established that John Deere's policy covered the feller buncher acquired by Conifer. When John Deere appealed this decision in *Federated Mutual I* we concluded that, as a result of the inconsistent and conflicting position taken by John Deere throughout the matter,

its inaccurate citations to authority, and the lack of support for its claims on appeal, John Deere should be sanctioned for its frivolous appeal. *See Federated Mutual I*, 277 Mont. at 142, 920 P.2d at 102. Meritless appeals are not legitimate litigation conduct. We conclude here that John Deere's fundamental right to defend itself extends only to legitimate litigation conduct and, on balance, the relevance of its frivolous appeal outweighs any prejudice which may result to its defense as a result of amendment of the pleadings to include the frivolous appeal.

28. ¶ John Deere also contends that postjudgment conduct is not admissible as evidence of bad faith. In support of this contention, it cites to *Palmer*, where this Court agreed with the appellant that "no bad faith occurred by virtue of the fact that [the appellant] appealed the jury verdict." The majority held that this Court was in the best position to determine the merits of cases before it, and sanctions were available as a remedy for frivolous appeals. *See Palmer*, 261 Mont. at 125-26, 861 P.2d at 917.

29. ¶ In this case, the question of whether John Deere's appeal was frivolous has already been decided by this Court, and sanctions have been assessed. The question remains, however, whether John Deere's decision to appeal the coverage issue was part of a continuing course of conduct designed to avoid a prompt, fair, and equitable settlement of a claim in which liability had become reasonably clear.

30. ¶ The entire course of conduct between the parties is relevant to show malice in a bad faith claim. *See Ellinghouse*, 223 Mont. at 251, 725 P.2d at 225. In *Ellinghouse*, we concluded that an insurer's postsettlement activity was relevant to show malice.

31. ¶ In this case, the merits of John Deere's appeal have already been decided by this Court. As a matter of law, John Deere prosecuted a meritless appeal. Sanctions have been assessed to compensate Conifer for its efforts in defending a frivolous appeal. However, no fact-finder has yet determined whether John Deere's actions on appeal were part of an unfair claim settlement practice and, if so, whether Conifer was damaged by the actions. We conclude that Conifer was entitled to present proof to the jury that John Deere's bad faith was a continuing course of conduct, and that its postjudgment conduct is admissible to prove malice. We hold that the District Court abused its discretion when it denied Conifer's motion to amend its pleadings to allege a meritless appeal as part of the basis for its claim.

## ISSUE 2

32. ¶ Is there sufficient evidence in the record to support the jury's verdict that malice had not been proven?

33. ¶ We review a jury's verdict to determine whether there is substantial credible

evidence in the record to support it. Substantial evidence is defined as evidence that a reasonable mind might accept as adequate to support a finding. When determining if substantial evidence exists, we view the evidence in the light most favorable to the prevailing party. *See Fillinger v. Northwestern Agency, Inc.* (1997), 283 Mont. 71, 79, 938 P.2d 1347, 1352-53.

34. ¶ Conifer contends that the verdict in favor of John Deere is not supported by the evidence. It contends that it met its burden to show that John Deere acted with reckless disregard for its own claim adjustment standards, while John Deere produced no contrary evidence.

35. ¶ John Deere contends first that Conifer waived its right to argue the sufficiency of the evidence on appeal when it failed to move for a directed verdict. It then contends that Conifer failed to produce any evidence of malice and that therefore the evidence supported the defense verdict.

36. ¶ In support of its contention that Conifer may not argue the sufficiency of the evidence on appeal, John Deere cites to Rule 50(b), M.R.Civ.P. which applies to motions for judgment as a matter of law. It points out that federal cases applying Rule 50(b), Fed.R.Civ.P., on which the Montana rule is patterned, preclude a party from questioning the sufficiency of the evidence on appeal if the party did not make a motion for a directed verdict in the court below. *See e.g., Cabrales v. County of Los Angeles* (9th Cir. 1988), 864 F.2d 1454, 1459, *vacated on other grounds*. John Deere correctly notes that Montana's Rule 50(b) is virtually identical to the federal rule. However, in Montana, "[w]hen a case comes before this Court where a motion for a new trial has not been made, this Court will review the evidence to determine whether there is any substantial evidence to justify the verdict." *See Johnson v. Murray* (1982), 201 Mont. 495, 505-06, 656 P.2d 170, 175. Therefore, we conclude that Conifer's sufficiency of the evidence argument is properly considered. However, having considered the evidence presented by both parties and all reasonable inferences to be drawn therefrom, we conclude there was sufficient evidence to submit the issue of malice to the jury and that Conifer was not entitled to judgment as a matter of law on the issue of John Deere's malice.

## ISSUE 3

37. ¶ Did the District Court err by allowing John Deere to make inappropriate comments to the jury?

38. ¶ John Deere commented during closing argument that it had two experts who were prevented from testifying because of Conifer's objections. Its attorney stated:

Now Mr. Beers says, well, Mr. Williams didn't call any experts to talk to you about the case. I don't think that's a fair criticism on Mr. Beers' part, because he knows full well that I had two experts listed and have had them listed for months. I was prevented from using them, because he objected to them.

39. ¶ The District Court had ruled that the proposed testimony from the two witnesses was inadmissible pursuant to the Montana Rules of Evidence. Implicit in John Deere's statement during closing argument, however, was that Conifer somehow concealed evidence from the jury.

40. ¶ Comments upon the trial court's exclusionary rulings are improper. *See Gunnels v. Hoyt* (1981), 194 Mont. 265, 276, 633 P.2d 1187, 1194. Improper argument requires reversal when prejudice has resulted which prevents a fair trial. *See Harne v. Deadmond*, 1998 MT 22, ¶5, 287 Mont. 255, ¶5, 954 P.2d 732 ¶5; *Moralli v. Lake County* (1992), 255 Mont. 23, 32, 839 P.2d 1287, 1292. In *Harne*, we stated:

Civil cases reviewing misconduct by counsel, including improper statements during closing argument, have focused on whether the misconduct was cured by an instruction from the court. In *Gunnels v. Hoyt*, defense counsel, during closing arguments, improperly alluded to evidence not in the record. We determined that the subsequent instructions given by the district court prevented any prejudice that may have resulted to the plaintiff. *Gunnels*, 633 P.2d at 1194. We further concluded that the misconduct of defense counsel did not rise to the level of reversible error. *Gunnels*, 633 P.2d at 1195. Similarly, in *Moralli*, we held that misconduct by plaintiff's counsel was "sufficiently cured by the District Court's instruction regarding the comment." *Moralli*, 839 P.2d at 1293. In this case, however, the District Court did not admonish or otherwise instruct the jury not to consider the improper arguments made by defense counsel. As a result, the jury was left to consider the improper arguments. We conclude that the arguments made by defense counsel were improper, prejudicial, and constitute reversible error.

*Harne*, ¶ 11.

41. ¶ In *Kuhnke v. Fisher* (1984), 210 Mont. 114, 683 P.2d 916, counsel for the defendant made several improper arguments to the jury at trial. On appeal, this Court held that:

What controls is that in this case, where there was conflicting but substantial

evidence on both sides of the issue, and where it appears that one of the parties was prevented from receiving a fair trial by improper argument in summation, the question of whether substantial evidence supports the jury verdict in spite of the oral argument does not arise. The acid of the improper argument may have eaten away the substantial evidence presented by the plaintiff and left only prejudice against him. When a party's right to a fair trial has been materially impaired by improper jury argument, the fact of the imperfect trial transcends the substantial but conflicting evidence that supports the jury verdict.

*Kuhnke*, 210 Mont. at 125, 683 P.2d at 922.

42. ¶ We conclude that the District Court erred when it allowed Deere's attorney to comment on witnesses who had been excluded by the District Court and that Conifer's right to a fair trial was materially impaired by John Deere's improper comments during closing argument.

## ISSUE 4

43. ¶ Did the District Court err when it refused to give Conifer's proposed law of the case instruction and allowed John Deere to present a defense contrary to the law of the case?

44. ¶ We review jury instructions in a civil case for abuse of discretion, and a district court has broad discretion to give or refuse a party's proposed jury instruction. *See Fillinger*, 283 Mont. at 76, 938 P.2d at 1350-51. In reviewing whether a particular jury instruction was properly given or refused, we must consider the instruction in its entirety, as well as in connection with the other instructions given *and with the evidence introduced at trial*. *See Fillinger*, 283 Mont. at 83, 938 P.2d at 1355. The party assigning error to a district court's instruction must show prejudice in order to prevail. Prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. *See Fillinger*, 283 Mont. at 76, 938 P.2d at 1351.

45. ¶ Conifer offered proposed jury instruction No. 35, which set forth three paragraphs from this Court's opinion in *Federated Mutual I* as facts which had been determined to be true as a matter of law. The District Court rejected the proposed "law of the case" instruction. Conifer contends that this was error because it allowed John Deere to present testimony contrary to the facts found by this Court. John Deere counters that the jury was properly instructed that coverage applied and that it did not have a reasonable basis for disputing the coverage.

46. ¶ We agree with John Deere and the District Court that the instructions as given would ordinarily have been adequate. However, in light of John Deere's repeated efforts to prove to the jury that it had acted reasonably, we conclude that the instructions as given were inadequate.

47. ¶ The difference between the instructions given and Conifer's proposed instruction was that the instructions given stated only the conclusi,on which this Court reached in *Federated Mutual I*, while Conifer's proposed instruction stated the specific facts upon which those conclusions were based.

48. ¶ The District Court warned the parties prior to trial that the reasonableness of John Deere's actions was no longer an issue and they were not to present testimony regarding the reasonableness of its actions. During trial, Conifer objected 29 times to attempts by John Deere to portray its actions during the coverage dispute as reasonable. Twenty-three of the objections were sustained by the District Court, however the Court did not sanction Deere for its repeated attempts to offer improper evidence that it had acted reasonably. As a result of the instructions given and John Deere's violation of the District Court's pretrial ruling, John Deere, in effect, relitigated several of the fact issues previously settled by this Court.

49. ¶ Beginning with its opening statement, John Deere attempted to establish that a large part of the disagreement between the parties in this case was whether or not it was necessary to count the first day when computing a 30-day coverage period, and to suggest that this dispute was "reasonable" until settled by this Court in *Federated Mutual I*. However, this Court had already determined in *Federated Mutual I* that the 30-day period for automatic coverage did not expire until July 24, one week after the feller buncher was destroyed, and that John Deere had no reasonable basis for disputing the length of the coverage period, because it had known this since August 21, 1991. *See Federated Mutual I*, 277 Mont. at 140, 920 P.2d at 100.

50. ¶ During closing, John Deere's counsel made the following argument:

And the only requirement they had is to give us notice within 30 days of the time you acquired, and counting the first day, the first day of coverage, is the first day of notice. They said, well, you didn't tell us within 30 days. The fire didn't occur within 30 days.

And the counting is easy. You can take a calendar out, and look at it yourself, and count the 17th as the first day, and the 17th of July is the 31st day. That's how they counted it. That's how they were providing coverage.

51. ¶ Deere also argued during closing that there were "lease problems" and that Conifer had no intention of purchasing insurance until they were resolved. However, this Court had already determined in *Federated Mutual I* that there was a valid lease for the feller buncher and that the machine was insured by John Deere at the time it was destroyed. *See Federated Mutual I*, 277 Mont. at 142, 920 P.2d at 102.

52. ¶ Considering the jury instructions in light of John Deere's repeated violations of the District Court's pretrial ruling that no evidence or argument was to be presented contradicting the prior rulings on coverage and liability, we conclude that the jury instructions as a whole failed to adequately present the law of the case.

53. ¶ We conclude that the District Court erred when it excluded postlitigation evidence, and when it instructed the jury, and that John Deere presented improper testimony and improper argument to the jury. We further conclude that Conifer's right to a fair trial was substantially impaired. Accordingly, we reverse the judgment of the District Court in favor of John Deere and remand for a new trial.

## JOHN DEERE'S CROSS-APPEAL

## ISSUE 5

54. ¶ Did the District Court err when it awarded summary judgment in favor of Conifer on the issue of Deere's liability and instructed the jury that Deere had acted "unreasonably"?

55. ¶ Our standard of review on appeal from summary judgment is de novo. When reviewing a district court's grant of summary judgment, we apply the same criteria, based on Rule 56, M.R.Civ.P., as the district court. *See Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903; *Scott v. Henrich* (1997), 283 Mont. 97, 100, 938 P.2d 1363, 1365-66 (hereinafter "*Henrich*"). In *Bruner*, this Court set forth the following inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non_moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Bruner*, 272 Mont. at 264, 900 P.2d at 903 (citations omitted).

56. ¶ In its motion for summary judgment, Conifer argued that the doctrines of collateral estoppel and law of the case established as a matter of law, certain facts and conclusions set forth in this Court's decision in *Federated Mutual I*. As a result of those facts and conclusions, Conifer argued it was entitled to a partial summary judgment holding that John Deere violated the MUTPA.

57. ¶ John Deere contends that the District Court erred when it awarded Conifer partial summary judgment, because the doctrines of collateral estoppel and law of the case are inapplicable. It further contends that "reasonableness" is always a question of fact which must be determined by a jury, and that the summary judgment award violated John Deere's due process rights.

58. ¶ The doctrines of res judicata, collateral estoppel, and law of the case, are all based on judicial policy favoring a definite end to litigation. The doctrine of res judicata prevents a party from relitigating a matter that the party has already had an opportunity to litigate. *See Henrich*, 283 Mont. at 101, 938 P.2d at 1366.

59. ¶ The doctrine of collateral estoppel is similar to the doctrine of res judicata. The doctrines differ in that res judicata bars the same parties from relitigating the same cause of action, while collateral estoppel bars the party against whom the claim is asserted, or a party in privity with the earlier party, from relitigating issues which have been decided with respect to a different cause of action. *Haines Pipeline Constr., Inc. v. Montana Power Co.* (1994), 265 Mont. 282, 287-88, 876 P.2d 632, 636. "Collateral estoppel also prevents relitigation of determinative facts which were actually or necessarily decided in a prior action." *Haines*, 265 Mont. at 288, 876 P.2d at 636.

60. ¶ The law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided." *In re Marriage of Scott* (1997), 283 Mont. 169, 175, 939 P.2d 998, 1001_02.

[W]here upon an appeal, the Supreme Court, in deciding a case presented, states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal.

*Marriage of Scott*, 283 Mont. at 175_76, 939 P.2d at 1002.

61. ¶ We disagree with John Deere's position that the doctrines of collateral estoppel

and law of the case are inapplicable. Deere's citation to *Henrich* in support of its contention is misplaced, as *Henrich* applies the doctrine of res judicata. The doctrine of res judicata is inapplicable to the instant facts.

62. ¶ However, in *Federated Mutual I*, also an appeal from summary judgment, we affirmed certain facts which were essential to that decision, were not disputed by the parties and were, therefore, established as set forth elsewhere in this opinion. Those facts were necessarily decided in a prior action. The doctrine of collateral estoppel prevents the relitigation of those facts, and Conifer relied on those facts to move for summary judgment on the issue of MUTPA liability.

63. ¶ The District Court accurately stated that "it is unusual to grant summary judgment in such a case and it remains the general rule that summary judgment is not favored at this point in the proceedings." Specifically, the question of whether an insurer had a reasonable basis for denying a claim is usually a factual question for the jury. *See Dean v. Austin Mut. Ins. Co.* (1994), 263 Mont. 386, 389, 869 P.2d 256, 258. However, we agree with the District Court that the very same facts which were previously established preclude John Deere from establishing that it had a reasonable basis for contesting the claim for insurance benefits.

64. ¶ John Deere also argues that the jury instructions stating that John Deere's behavior was "unreasonable as a matter of law," based upon the law of the case, were highly improper and prejudicial, and amounted to virtually a directed verdict on the issue of malice.

65. ¶ The party assigning error to a district court's instruction must show prejudice in order to prevail. Prejudice will not be found if the jury instructions in their entirety state the applicable law of the case. *See Fillinger*, 283 Mont. at 76, 938 P.2d at 1351. In this case, John Deere can show no prejudice, because a defense verdict was returned. Because the parties will have an opportunity to submit new instructions on remand, we decline to address this argument.

66. ¶ We also conclude that John Deere's contention that its due process rights have been violated is without merit. In support of its contention, John Deere cites to *Nygard v. Hillstead* (1979), 180 Mont. 524, 591 P.2d 643, wherein we concluded that the defendants had been denied an opportunity to be heard, in violation of their right to due process, because the district court had summarily truncated the defendants' case prior to the presentation of the bulk of their evidence. *See Nygard*, 180 Mont. at 528-29, 591 P.2d at 645. John Deere argues that the limited facts presented during the briefing before this Court in *Federated Mutual I*, which were considered by the District Court on summary judgment, were inadequate to provide due process.

67. ¶ However, during the summary judgment proceedings before the District Court in the coverage phase of this case, John Deere had ample opportunity to raise factual issues. It was John Deere, in fact, which first brought a motion for summary judgment before the District Court, arguing that there were no material facts in dispute. Moreover, during the summary judgment proceedings on remand, John Deere again failed to present any material factual issues which precluded summary judgment. In its order awarding summary judgment on liability, the District Court explicitly stated that the very same facts had been presented and that "no additional facts have been argued to this Court."

68. ¶ John Deere had an opportunity to present evidence of a legitimate factual dispute to the District Court, but failed to do so. We find the facts in this case clearly distinguishable from *Nygard*, and we conclude that John Deere was not denied an opportunity to be heard.

69. ¶ Accordingly, we affirm the judgment of the District Court on the issue of MUTPA liability.

## ISSUE 6

70. ¶ Did the District Court err when it excluded the testimony of Deere's expert witnesses?

71. ¶ Our standard of review relating to discretionary trial court rulings is whether the trial court abused its discretion in admitting or excluding the evidence. *See Steer, Inc. v. Dep't of Revenue* (1990), 245 Mont. 470, 475, 803 P.2d 601, 603_04.

72. ¶ Rule 403, M.R.Evid., provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

73. ¶ Rule 702, M.R.Evid., provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

74. ¶ John Deere sought to present expert testimony from Robert J. Phillips, former counsel for John Deere, and from Terry McDonald, counsel for Federated Insurance, the original plaintiff. The District Court concluded, based on its review of Mr. Phillips' deposition, that his testimony would create unnecessary confusion, and that his proferred legal conclusions were largely irrelevant. The District Court concluded that Mr. McDonald's proferred testimony, that in his opinion, John Deere

had a colorable argument for denying the claim, would similarly create confusion for the jury because of his prior involvement in the underlying case.

75. ¶ We conclude that the District Court did not abuse its discretion when it excluded the testimony of Mr. Phillips and Mr. McDonald.

ISSUE 7

76. ¶ Did the District Court err when it allowed Conifer to amend its complaint to include an Unfair Trade Practices claim after the expiration of the statute of limitations?

77. ¶ John Deere contends that Conifer was required by § 33-18-242(7), MCA, to commence its MUTPA claim by August 1993, within two years of its original denial of coverage in the case. John Deere issued a final "denial of coverage" letter to Conifer in September 1993.

78. ¶ Rule 15(c), M.R.Civ.P., provides that an amendment which states a claim which would be otherwise barred by the statute of limitations, relates back to the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading . . . ."

Rule 15(c) is based on the concept that a party who is notified of litigation concerning a given transaction or occurrence has been given all the notice that statutes of limitations are intended to afford. Thus, if the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged, such as by specifying particular acts of negligence under a general allegation of negligence, or remedies a defective pleading, will relate back even though the statute of limitations has run in the interim. Similarly, while it is still the rule that an amendment which states an entirely new claim for relief based on different facts will not relate back, if the pleading sufficiently indicates the transaction or occurrence on which the claim or defense is based, amendments correcting specific factual details, such as time and place, as well as other items, will relate back.

*Prentice Lumber Co. v. Hukill* (1972), 161 Mont. 8, 15, 504 P.2d 277, 281 (citing 3 Moore's Federal Practice § 15.15(3), at 1025_27).

79. ¶ Conifer's third-party complaint, dated November 16, 1993, alleges that its equipment was insured by a policy issued by John Deere, that the equipment at issue was covered by the policy, that John Deere wrongfully refused to provide coverage, and that John Deere wrongfully refused to provide a defense for Conifer in the underlying action. In support of its motion to amend the complaint, dated October 22, 1996, Conifer sought to amend its third party complaint "to more precisely articulate its claims under the [MUTPA] as well as to supplement its pleadings to incorporate a further claim based upon the determination by the Court that John Deere's appeal was without merit."

80. ¶ In this case Conifer's MUTPA claim arises from the same transaction alleged in the original complaint, that John Deere wrongfully refused to provide coverage and settle the claim promptly, fairly, and equitably. The original complaint, while lacking a prayer for punitive damages, does allege that John Deere wrongfully refused to provide coverage. Therefore, we conclude that Conifer's MUTPA amendment relates back to the original complaint, and that the District Court did not abuse its discretion when it allowed the amendment.

81. ¶ John Deere appears to have also raised the question of whether the original complaint was barred by the statute of limitations. John Deere failed to raise the statute of limitations as a defense in its answer to the original complaint, however, and cannot now raise that defense. *See* Rule 8(c), M.R.Civ.P.; *Estabrook v. Baden* (1997), 284 Mont. 419, 421, 943 P.2d 1334, 1336; *Bennett v. Dow Chem. Co.* (1986), 220 Mont. 117, 122, 713 P.2d 992, 995-96.

## ISSUE 8

82. ¶ Did the District Court err when it admitted evidence of acts which occurred more than two years prior to the commencement of the Plaintiff's cause of action?

83. ¶ John Deere contends that on retrial the evidence should be limited to acts which occurred within the statute of limitations period, and therefore no evidence of investigations or denials which occurred prior to November 16, 1991 should be admitted.

84. ¶ The MUTPA provides an independent cause of action for unfair claim settlement practices, including refusal to pay claims without conducting a reasonable investigation and neglecting to attempt in good faith to effectuate prompt, fair and equitable settlements when liability has become reasonably clear. *See* Section 33-18-242, MCA. In this case, John Deere's alleged failure to conduct a reasonable investigation and subsequent refusal to pay the claim, if proved, is part of a

continuing course of conduct which began on July 18, 1991, when Conifer notified John Deere of the loss, and continued well past the time the third-party complaint was filed in November 1993. Thus, none of the investigation or claim denial conduct should be excluded because of the statute of limitations.

85. ¶ We conclude that the District Court did not abuse its discretion when it admitted evidence of John Deere's pre-November 1991 investigation conduct.

86. ¶ Based on the foregoing, we vacate the judgment of the District Court and remand for a new trial consistent with this opinion. We further affirm the District Court with respect to the issues presented on cross-appeal.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART