No. 00-114

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 331N

RAY SEGAL and CINDY SEGAL, CHANCE

INVESTMENT PARTNERSHIP; DAVID G.

CAMERON and SANDRA K. CAMERON;

BRUCE L. LAY and PAMELA A. LAY;

JAMES S. GREEN and HELEN A. GREEN,

Trustees of the Green Living Trust dated

July 19, 1995; and RIVER'S EDGE LODGE, LC,

a Montana Limited Liability Company,

Plaintiffs and Appellants,

v.

A.C. WAGNER, M.D.,

Defendant and Respondent.

APPEAL FROM: District Court of the Sixth Judicial District,

In and for the County of Park,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

John C. Brown; Cok, Wheat, Brown & McGarry, Bozeman, Montana

For Respondent:

J. Robert Planalp; Landoe, Brown, Planalp, Braaksma & Reida,

Bozeman, Montana

Submitted on Briefs: June 22, 2000
Decided: December 14, 2000

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issues by this Court.

¶2 Parties to this suit are property owners in the Jumping Rainbow Ranch Subdivision in Park County, Montana. Appellants (Segal) claim that they have an easement over respondent's property for ingress and egress to their lots. The respondent (Wagner) has denied them access. The parties filed cross-motions for summary judgment. The District Court granted summary judgment in favor of Wagner. We affirm.

## BACKGROUND

¶3 From June of 1994, when he or his predecessors purchased his lot, until 1997, Segal accessed his property through what has been referred to as the subdivision's "westerly road." In 1997, the Yellowstone River washed out this road, making it impassable. Segal now claims that he has an access easement over an "easterly road" that passes through property in the subdivision owned by Wagner.

¶4 The Jumping Rainbow Ranch Subdivision was created on May 20, 1985, when its developer, the Schnitzler Corporation (Schnitzler), recorded subdivision Plat 72 and the Declaration of Covenants and Easements (Original Declaration). The subdivision was then, and is now, made up of 36 one-acre home sites together with a large common area designated as Lot 37. Most of the lots are circular so Lot 37 includes the land between and around these home sites as well as larger areas of open space. Both the "westerly" and "easterly" roads enter the subdivision from the north and run generally southward through Lot 37.

¶5 Wagner purchased Lot 19 in 1985, shortly after the subdivision was created. In 1989, he and Schnitzler entered into an option agreement that would allow Schnitzler to terminate and reorganize the subdivision. If Schnitzler exercised the option, Wagner would receive 5.2 acres of Lot 37-his pro rata share of the common area. Schnitzler later assigned this agreement to its successor, JRR, L.C. They exercised the option on June 1, 1994. Subsequently, JRR, L.C. reorganized the subdivision by terminating the Original Declaration and recording a Restated Declaration of Covenants, Conditions, Restrictions and Easements (Restated Declaration).

¶6 Segal purchased his property after JRR, L.C. terminated the old subdivision and recorded the Restated Declaration. The Restated Declaration granted easements, appurtenant to each lot, for "providing access, ingress and egress to and from the Lots in the Subdivision . . . over, along, on and across portions of Lot 37 owned by [JRR, L.C.]." The Restated Declaration describes the location of these access easements as "more particularly shown and depicted on the plat of the Subdivision . . . ."

¶7 At the time, the "plat of the subdivision" consisted of the original plat (Plat 72), and an amended plat recorded to implement the 1989 Agreement (Plat 103). Plat 72 appears to show two existing roads; one on the west side of the subdivision and one on the east. Neither clearly runs all the way to Segal's lot. Plat 103, however, clearly shows existing east side and west side roads that continue to and past Segal's property. The east side road passes through the 5.2 acres that would later be transferred to Wagner pursuant to the 1989 Agreement.

¶8 In addition to granting the access easements, Article 3.1(a) of the Restated Declaration, in subparts (i) and (ii), expressly reserved to JRR, L.C. the right to relocate them:

> (i) [JRR, L.C.], for itself and its successors and assigns, acting in its sole discretion,

hereby reserves the right to designate the specific location or route for any such driveways and access roads, and further reserves the right to relocate any such driveways and access roads, and (ii) in the event the actual location of such driveways or access roads are different than the approximate locations shown on the plat of the Subdivision, then the Access Road Easement shall be that strip of land on, over and across which said driveways and access roads are actually laid out, constructed and located.

¶9 Having exercised the option, JRR, L.C. was contractually obligated to convey the 5.2-acre parcel to Wagner. To accomplish this, it had to apply to the Park County Planning Board to amend the plat. In addition to creating the 5.2-acre parcel, now designated Lot 19A, this application resulted in a condition being placed on the amended plat "reserving for the benefit of [plaintiffs' lots] an emergency access along an existing road surface extending from the northeast corner of the tract to a point on the southerly line of the tract [the "easterly road"]. JRR, L.C. recorded the new plat (Plat 172) on February 27, 1995. It clearly labels the easterly road as an "emergency access easement for the benefit of [plaintiffs' lots] and the westerly road as the "main access to [plaintiffs' lots]."

¶10 On May 30, 1995, JRR, L.C. carved Lot 19A out of Lot 37 and conveyed it by warranty deed to Wagner. The deed conveyed the 5.2-acre tract subject to all "easements and rights of way, whether apparent, existing, or of record" and specifically reserved, for the benefit of Segal, the emergency access easement described on Plat 172.

¶11 In the spring of 1997, the Yellowstone River flooded, washing out the westerly road. Wagner denied Segal permission to permanently access his properties via the easterly road and the lawsuit ensued.

## ISSUES

¶12 The parties raise two issues on appeal:

¶13 Issue 1. Does the doctrine of equitable conversion prevent creation of access and utility easements after Wagner's 1989 agreement with Schnitzler?

¶14 Issue 2. Do appellants, as a matter of law, have the right to use their emergency easement through Lot 19A for normal ingress and egress?

¶15 We decline to review the equitable conversion issue as raised by the parties. Rather,

we decide the access easement issue on other grounds.

## DISCUSSION

¶16 Our standard of review for a district court's order granting summary judgment is *de novo*. Burleson v. Kinsey-Cartwright, 2000 MT 278, ¶ 11, ___ Mont. ___, ¶ 11, ___ P.3d ___, ¶ 11 (citing Federated Mutual Ins. Co. v. Anderson, 1999 MT 288, ¶ 55, 297 Mont. 33, ¶ 55, 991 P.2d 915, ¶ 55). Therefore, when we review a district court's grant of summary judgment, we apply the same criteria set out in Rule 56, M.R.Civ.P. *Burleson*, ¶ 11. Under that rule, summary judgment is appropriate when the court is presented with no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Burleson*, ¶ 11.

¶17 Issue 1: Under the terms of the documents creating the subdivision, does Segal, as a matter of law, have a general access easement over Lot 19A?

¶18 Wagner argues that any and all easements created by the Original Declaration were terminated or relinquished prior to the time Segal acquired his property. In addition, he contends that, following execution of the 1989 Agreement, the doctrine of equitable conversion prevented Schnitzler or JRR, L.C. from burdening that portion of Lot 37 that became Lot 19A with any new easements. Segal contends that the Restated Declaration granted him an access easement over Lot 37, with the location defined by reference to roads shown on the "plat of the subdivision." He argues that Plat 72 as amended by Plat 103, the plats that existed at the time he purchased his property, showed an existing "easterly road" crossing through the part of Lot 37 that was later transferred to Wagner as Lot 19A. Furthermore, he contends that the doctrine of equitable conversion does not limit creation of new easements on Lot 19A because both the 1989 Agreement and the conveyance of Lot 19A to Wagner were made subject to existing easements.

¶19 We decline to address the equitable conversion issue. Although neither the parties nor the District Court addressed the effect of Article 3.1(a)(i) and (ii) of the Restated Declaration, we hold that the terms of the Restated Declaration are controlling and, as a matter of law, they grant JRR, L.C. authority to designate the location of easements. JRR, L.C. exercised that authority when it recorded Plat 172. This plat clearly shows an access easement along the westerly road and an emergency easement on the easterly road. We conclude, therefore, that Segal has no general access easement over the "easterly road" or through Lot 19A.

¶20 As Segal points out in his brief, interpretation of the Restated Declaration is a question of law, not of fact. Because our resolution of this issue turns solely on the interpretation of the Restated Declaration, we conclude that there are no genuine issues of material fact and that Wagner is entitled to judgment as a matter of law. The District Court thus reached the right result and we affirm its decision.

¶21 Issue 2. Do appellants, as a matter of law, have the right to use the emergency easement through Lot 19A for normal ingress and egress?

¶22 Segal argues that, because the flood that washed out the westerly road was an "emergency," he is entitled to use the emergency easement along the easterly road for access to and from his property. While recognizing Segal's right to use the easterly road for emergency purposes, Wagner contends that the definition of "emergency" does not permit sustained use for general ingress and egress. The District Court found that the emergency easement was intended to provide access for emergency vehicles and allow the property owners to evacuate their properties if the need should arise. We agree.

¶23 The May 30, 1995 warranty deed conveying Lot 19A from JRR, L.C. to Wagner reserved the right for Segal to use the emergency access created by subdivision Plat 172:

> Reserving, for the benefit of [Appellants' lots], an emergency access along an existing road surface, extending from the northeast corner of [Lot 19A] to a point on the southerly line of this tract. The above term "emergency" is intended to pertain to situations involving fire, flood or potential loss of life.

Identical language appears on Subdivision Plat 172.

¶24 When construing an instrument, the intention of the parties is to be pursued if possible. Section 1-4-103, MCA. The terms of an instrument are presumed to have their ordinary meaning unless shown otherwise. Section 1-4-107, MCA. We think the clear, unambiguous purpose of this reservation is to allow necessary access for emergency services during and in response to an emergency. We agree with the District Court that normal ingress and egress for the purpose of developing or visiting property does not meet this definition.

¶25 This case presents no genuine issues of material fact and we conclude, based on the reasons stated above, that the defendant is entitled to judgment as a matter of law.

¶25 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JAMES C. NELSON

Justice Karla M. Gray, specially concurring.

¶27 I concur in the Court's opinion on issue 2 and specially concur on issue 1, agreeing with the result the Court reaches but not the approach it has chosen to reach it. I would affirm the District Court on the equitable conversion issue decided by that tribunal and argued by the parties on appeal, rather than simply declining to review the issue actually presented to us and resolving the access easement issue "on other grounds."

/S/ KARLA M. GRAY