No. 80-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

RONALD L. GUNNELS,

Plaintiff and Appellant,

vs.

ROBIN W. HOYT and MICHAEL CHAPPEL BALSAM,

Defendants and Respondents.

---

Appeal from: District Court of the Eleventh Judicial District,
In and for the County of Flathead.
Honorable James M. Salansky, Judge presiding.

Counsel of Record:

For Appellant:

Terry N. Trieweiler, Whitefish, Montana

For Respondents:

Murphy, Robinson, Heckathorn & Phillips, Kalispell,
Montana

---

Submitted on briefs: April 22, 1981

Decided: September 9, 1981

Filed: SEP - 9 1981

_Thomas J. Kearney_
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff appeals from the jury verdict and judgment entered in the District Court of the Eleventh Judicial District, Flathead County. The jury found the defendants "[not] guilty of negligence which was the proximate cause of Plaintiff's claimed damages," and also returned a similar verdict in favor of the plaintiff upon defendant Hoyt's counterclaim. The District Court entered judgment for the defendants. Hoyt does not cross-appeal.

Plaintiff presents two issues for review:

1. Was there evidence sufficient to support a verdict for the defendants?

2. Were defense counsel's comments on excluded evidence sufficiently prejudicial to warrant a reversal of the verdict for defendants and a new trial for the plaintiff?

We affirm the jury verdict and judgment.

This action arose out of a motor vehicle accident which occurred on September 19, 1977. Plaintiff Ronald Gunnels brought suit against Robin Hoyt and Michael Balsam, alleging that their negligence had been the cause of the accident that resulted in injury to Gunnels. Hoyt counterclaimed against Gunnels, alleging that she had sustained bodily injury as a result of Gunnels' negligence. Trial was held in September 1979. The jury found neither defendant/guilty had been of negligence which was the proximate cause of the plaintiff's claimed damages. Defendants were awarded costs and disbursements totaling $103.25. Plaintiff Gunnels appeals from the verdict and judgment against him.

Plaintiff Gunnels was driving a 1972 Dodge half-ton pickup on September 19, 1977. He drove into the rear of a 1965 Volkswagen sedan in the control of the defendants at

-2-

approximately 11:30 p.m. The collision occurred on Montana Highway 40 between Columbia Falls and Whitefish, at a spot 2.9 miles west of Columbia Falls, in the westbound lane climbing "Dollar Hill".

The road was wet, and there was a slight mist or drizzle in the air at the time of the accident. The night was extremely dark due to the rainy conditions and the wet asphalt road. The highway was over 47 feet wide at the site, but had no white stripe or "fog line" to demarcate the shoulder area and to separate it from the main roadway. Because the plaintiff questions the sufficiency of the evidence to support the verdict, we will review the evidence.

According to Hoyt and Balsam's testimonies, Robin Hoyt was driving west towards Whitefish, with Balsam as a passenger, in a friend's 1965 Volkswagen sedan. Approximately three miles west of Columbia Falls, on "Dollar Hill", two cats ran across the road in front of the car. Hoyt swerved to the right to avoid hitting the cats; she applied her brakes to stop the car but forgot to depress the clutch pedal, thereby causing the car to stall. The car stopped off and to the right of the main-traveled portion of the westbound lane according to both defendants, although there was no shoulder stripe, or "fog line", to separate the roadway from the shoulder area.

The defendants' had had trouble starting the car earlier due to a weak battery, and were not able to start the car again after stalling. They attempted to start it by "popping the clutch"; Balsam pushed the car backwards down the hill, while Hoyt remained in the driver's seat in order to let out the clutch while turning the ignition. They executed this maneuver 12-15 times over a period of 15-20 minutes, while

backing down the hill 100-200 yards. Both testified that they attempted to keep the car as close to the right "westbound" edge of the highway as possible, but that Hoyt had some difficulty in steering backwards straight down the hill and would swerve to either side on occasion. The car's headlights and taillights were on throughout the defendants' attempts to "pop the clutch".

During the above-described 15-20 minute period, seven or eight cars approached the Volkswagen going up the hill in the westbound lane toward Whitefish (the same direction in which the defendants had been traveling). Whenever a car came toward them, Balsam would push the Volkswagen to the edge of the westbound lane, as far out of the roadway as possible, and then move to the rear of the Volkswagen and attempt to warn the approaching car by means of waving and shining a flashlight at its windshield. The defendants testified that all of the approaching drivers slowed perceptibly to pass. One car even stopped.

As plaintiff's truck approached the Volkswagen from the rear, Robin saw the lights of the truck, and told Balsam of the vehicle coming. She placed the car in gear and pulled out the emergency brake. Balsam walked to the rear of the Volkswagen and started shining the flashlight at the windshield of plaintiff's truck. When plaintiff's truck did not slow down or show any evidence of plaintiff's having seen them, Balsam realized that the plaintiff was going to hit them. Balsam yelled at Hoyt to stay in the car, and ran off into the barrow pit.

Plaintiff testified he never saw Balsam or the flashlight or the Volkswagen prior to the collision. His truck, however, left 26 feet of skidmarks in a straight line down

-4-

the right, westbound lane, the left skidmark being approximately three feet from the center line. Plaintiff had been traveling 50-60 miles per hour according to the investigating patrolman. The patrolman also testified that a driver coming from either direction would have an unobstructed line of vision to the site of the accident for a distance of 500-600 feet.

Plaintiff filed a complaint alleging that the defendants' negligence had caused the collision and proximately resulted in damages to plaintiff in the nature of medical expenses, pain and suffering, loss of earning ability, and in property damage to the truck. The answer admitted the collision had occurred but denied that plaintiff's damages had been caused by any negligence on the part of either defendant. The answer alleged that any injuries or damages suffered by the plaintiff had been caused in whole or in part by his own negligence.

Jury trial was held in September 1979. At the close of the presentation of evidence, the plaintiff moved for a directed verdict as to liability, arguing that the defendants' negligence had been proved as a matter of law. The motion was denied. The jury returned the following verdict:

"SPECIAL VERDICT ON PLAINTIFF'S CLAIM

"We, the jury, answer the questions submitted to us in this Special Verdict as follows:

"QUESTION NO. 1: Were the following named Defendants, or either of them, guilty of negligence which was the proximate cause of Plaintiff's claimed damages?

"ANSWER: Robin Hoyt          Yes _____   No __X__
         Michael Balsam      Yes _____   No __X__ "

The jury was then polled, and all 12 agreed with the verdict. Judgment upon the complaint was entered in favor of the defendants.

## I.

Plaintiff's first issue disputes the sufficiency of the evidence to support the verdict. In considering the sufficiency of evidence, we apply a limited standard of review. Where a fact issue is presented before a court sitting with a jury, and there is substantial evidence to support the jury verdict, the verdict will stand. Matter of Estate of Holm (1979), ___ Mont. ___, 588 P.2d 531, 533, 36 St.Rep. 11, 13 (and cases cited therein).

We review the evidence in a light most favorable to the prevailing party. We will reverse only where there is a lack of substantial evidence to support the judgment. Groundwater v. Wright (1979), ___ Mont. ___, 588 P.2d 1003, 1004, 36 St.Rep. 41, 42; Holm, 588 P.2d 532, 36 St.Rep. 14.

Evidence may be inherently weak and still be deemed substantial, and substantial evidence may conflict with other evidence. Matter of Estate of Holm, supra.

If there is conflicting evidence in the record, the credibility and weight given to such conflicting evidence is the province of the jury and not this Court. Holm; Cameron; In Re Carroll's Estate (1921), 59 Mont. 403, 413, 196 P. 996, 998.

If there is substantial evidence in the record to support the finding of the jury, then we must sustain the trial court's action in denying the plaintiff's motion for a directed verdict. Butler Manufacturing Co. v. J & L Implement Co. (1975), 167 Mont. 519, 529, 540 P.2d 962, 968.

Plaintiff asserts that this Court has held that where an automobile collision is caused by the violation of a motor vehicle statute, a directed verdict should be entered against the party who violated the law upon the issue of liability,

and only the issue of damages should be submitted to the trier of fact. Such an argument is one of negligence per se.

The jury was instructed upon three statutes alleged to have been violated by the defendants at the time of the accident. Former section 32-2199, R.C.M. 1947, now section 61-8-353, MCA, as the jury was instructed, provides in part:

> "Upon any highway . . . no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off of such part of said highway, but in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles. No person shall stop, stand, or park any vehicle on such highway unless such vehicle can be seen by the driver of any other vehicle approaching from either direction within five hundred feet and unless drivers approaching from opposite directions are visible to each other when both are at least five hundred feet from the vehicle to be stopped, turned, or parked, except in cases of justifiable emergency."

Former section 32-21-118, R.C.M. 1947, now section 61-9-204, MCA, as the jury instructed, provides in pertinent part:

> "Every motor vehicle, . . . shall be equipped with at least one tail lamp mounted on the rear which, when lighted as required, shall emit a red light plainly visible from a distance of five hundred feet to the rear . . ."

Former section 32-21-104, R.C.M., 1947, now section 61-8-358, MCA, as the jury was instructed, provides that:

> "The driver of a vehicle shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic."

In order to prove negligence per se, the plaintiff was required to prove that the defendants neglected a duty imposed upon them by statute. Williams v. Maley (1967), 150 Mont. 261, 267, 434 P.2d 398, 401; Conway v. Monidah Trust Co. (1913), 47 Mont. 269, 278, 132 P. 26, 27. In pertinent part, section 61-8-353, MCA, provides that no person shall stop or leave standing any vehicle upon the main traveled

part of the highway when it is _practical_ to stop or leave such vehicle off of such part of said highway. What is "practical" in any situation clearly depends upon all of the surrounding facts and circumstances. See Lyndes v. Scofield (1979), ___Mont.___, 589 P.2d 1000, 1002, 36 St.Rep. 185, 188. Questions of fact are for the jury to resolve, and should not be taken from the jury when reasonable men might draw different conclusions from the evidence. Heen v. Tiddy (1968), 151 Mont. 265, 269, 442 P.2d 434, 436. In looking at the evidence in the light most favorable to the defendant, we find that the defendants could have stopped the Volkswagen closer to the right edge of the pavement and further off the main traveled area; but we also find that the weather conditions, the darkness, the hill, the absence of white lines, head lights and tail lights, and the use of the flashlight by the defendant to warn approaching drivers, all bear upon the question of practicality. This Court will not disturb the jury's determination if the evidence furnishes reasonable grounds for different conclusions. Payne v. Sorenson (1979), ___Mont.___, 599 P.2d 362, 365, 36 St. Rep. 1610, 1613. We do not find a violation of section 61-8-353, MCA, as a matter of law.

Plaintiff contends that the defendants were negligent per se in violating section 61-9-204, MCA, the tail lamp statute. The evidence showed that the Volkswagen's battery was in a partially discharged condition prior to stalling, but also showed that the tail lights of the car were on at the time of the accident. We cannot conclude as a matter of law that the defendants violated this section. There is a question of fact for the jury to resolve which should not be taken from the jury where reasonable men might draw different conclusions, Heen.

Section 61-8-358, MCA, is the backing statute. While the defendants had been backing the Volkswagen at an earlier time, the Volkswagen was stationary at the time of the collision. A question may be raised as to whether the backing statute should apply. In addition, under the statute a determination was required as to whether or not the movement of backing could be made with reasonable safety and without interfering with other traffic. Again we conclude that there was not a violation of the statute as a matter of law, and that the questions of fact are for the jury to resolve.

We find substantial evidence to support a determination that the defendants did not breach any of the duties imposed by the above cited statutes.

## II.

Plaintiff contends on common law negligence grounds that there is no evidence to support a conclusion that the defendants did not breach the duty of care owed to the plaintiff.

It was up to the jury to decide whether the defendant had exercised the ordinary care required of a reasonable and prudent person under the circumstances. The jury was properly instructed. Plaintiff assigns no error to any instructions. Substantial evidence supports the verdict in this regard when viewed in a light most favorable to the defendants: the defendants attempted to keep out of the roadway as much as possible, left the Volkswagen's lights burning, and attempted to warn approaching cars by waving a flashlight at them; the drivers of seven or eight cars saw the defendants and slowed down to pass prior to the collision. The jury could reasonably conclude that such actions had fulfilled the duty to exercise ordinary care.

-9-

The plaintiff argued to the jury that the Volkswagen was less visible to the plaintiff than it had been to the previous approaching cars, for the reasons that, by the time the plaintiff approached, the Volkswagen was farther out in the roadway, was closer to the curve around which it first became visible, and was less well lighted due to further discharge of the battery. These were all factual arguments which the jury could accept or reject, and where substantial evidence in the defendants' favor exists, we will not disturb the judgment.

### III.

One of the issues raised in the pleadings and framed in the pretrial order was whether the defendants' actions had proximately caused plaintiff's injury. We find substantial evidence to support a determination that they did not.

The jury was instructed about the plaintiff's duty to operate his vehicle in a careful and prudent manner and at a rate of speed no greater than is reasonable and proper under the existing conditions (section 61-8-303, MCA, formerly section 32-2144, R.C.M. 1947), and his duty to see that which he could have seen by keeping a proper lookout. Plaintiff assigns no error to the instructions. There is substantial evidence to support a conclusion that the plaintiff's injury was proximately caused by his own actions, and not by any negligence on the part of the defendants.

The investigating patrolman testified the accident could have had several causes, including the possibilities that the plaintiff was traveling too fast and not keeping a proper lookout. Testimony by a plaintiff that he did not see another vehicle prior to hitting it has previously been recognized as evidence of the plaintiff's own negligence

sufficient to support a verdict for the defendant. Bernhard v. Lincoln County (1968), 150 Mont. 557, 561, 437 P.2d 377, 380. Having reviewed the evidence and concluded it is substantial and sufficient to support the jury verdict, our inquiry on this issue is ended.

IV.

Plaintiff alleges several instances of misconduct by defense counsel, the most serious being that defense counsel made improper comments upon and references to excluded evidence, which indicated to the jury that the plaintiff was concealing evidence.

The defense attempted to introduce into evidence the records of a Dr. Kiley, who had been the first physician to examine the plaintiff after the collision. Dr. Kiley was not called by the plaintiff although listed in the pretrial order as a witness to be called at trial. The defense could not locate Dr. Kiley, and attempted to establish the accuracy of the records by calling an employee of the doctor. The employee was not familiar with the records or the doctor's record keeping procedure; the records were excluded upon objection by the plaintiff. During the argument regarding admissibility, defense counsel spoke as follows:

> "THE COURT: I haven't seen the records. I don't know what she is going to testify to. As I indicate, I am concerned that the doctor isn't here to explain things, make sure nothing has been left out.
>
> "[Defense Counsel]: Your Honor, that of course-- I have my case, the claimant has his. And if he wants to be sure that nothing has been left out, he could call the treating doctor. I would have called him. I couldn't get him. But as it is, I want this portion. Plaintiff had the same chance that I did.
>
> "[Plaintiff's Counsel]: Your Honor, I don't have to call somebody who has no information to offer, and I don't have to sit here and let half of the information go in because he didn't ask him ahead of time.

-11-

"THE COURT: I am concerned about the lack of cross examination, so I will sustain the objection." (Tr. p. 408)

Later, during the closing argument, defense counsel made reference to the records:

"Now, what about Dr. Kiley? There is an instruction that is on all four's on that. I want to read it to you. And it is Court's instruction number 23 and 24. 'Evidence considered not only by its only intrinsic weight, but according to the evidence within the power of one side to produce and the other to contradict. And that if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence could have been produced, the evidence should be viewed with distrust.

"24, 'If a party has failed to produce a witness within his power to produce, you may, if you see fit, infer from that, that if you are given the testimony of such witness it would not have been favorable to such party.' And then it goes on to say that depends on whether he was available to both sides.

"Now, you know that I subpoenaed the records of Dr. Kiley. Now, laides [sic] and gentlemen, I don't think that that is my duty. I am the defendant in this case. I am not the one that should bring in plaintiff's treating doctors. And I believe that was the plaintiff's duty. And I believe that he should have brought them in. But I subpoenaed the records, and I tried to get the records for you. And now the Court has told you that you can believe as men and women what you would believe as jurors. Now, as men and women you may believe that those records of Dr. Kiley, and Dr. Kiley's testimony--

"[Plaintiff's Counsel]: I am going to object, Your Honor, That is contrary to the Court's instruction, which is that he is not to comment on why the Court made a ruling, because they don't know. And he can't tell them. He is only misleading the jury right now.

"THE COURT: I don't think your conclusion is correct, Mr. Heckathorn. Go ahead.

"[Defense Counsel]: . . . [Y]ou may conclude, if you wish, under the Court's instruction number 25, that that testimony would be unfavorable to the plaintiff. And I think the plaintiff had the obligation of bringing that witness in to you and letting Dr. Kiley tell you about his condition." (Tr. pp. 519-20)

Plaintiff alleges the two statements by defense counsel implied to the jury that the plaintiff was attempting to

-12-

conceal evidence, and improperly commented upon the court's reasons for excluding evidence. We do not agree.

In the first cited instance, defense counsel was not implying a concealment of evidence; he was responding to the court's question of concern that the records might not be complete. Defense counsel answered that if the plaintiff believed something was left out, he could call the doctor as a witness and find out. There is no basis to compare that statement with the one made in Ralph v. MacMarr Stores (1936), 103 Mont. 421, 436, 62 P.2d 1285, 1291, where counsel stated, "If I can prevent it you are not going to hide this lady's case from this Court and Jury."

When read in context, the second instance shows that defense counsel was commenting upon the plaintiff's failure to call Dr. Kiley or to provide his records, within the context of the court's instruction no. 24. Counsel was interrupted by the plaintiff's objection in midsentence, and as a result, was misunderstood. He was not saying the jury could believe the records and Dr. Kiley's testimony; obviously, such would have been impossible. He was saying the jury could believe that the evidence, if produced, would have been favorable to the defendants but was interrupted before he could finish. Plaintiff does not assign any error to the instruction itself.

The only reference in the second example which might have been improper is defense counsel's statement that he had subpoenaed the records, and tried to get them in. Perhaps that did comment upon the court's exclusionary ruling. But the court's instruction no. 1 adequately warned the jury not to draw any inferences from rulings on evidence, not to consider rejected evidence, and not to conjecture or

draw any inferences as to what an answer might have been, or as to the reason behind any objection. Improper argument requires reversal only when prejudice has resulted which prevents a fair trial. Vogel v. Fetter Livestock Co. (1964), 144 Mont. 127, 139, 394 P.2d 766, The jury was properly instructed. We cannot say that any prejudice resulted to the plaintiff.

We find substantial evidence to support the jury's verdict when the record is viewed in the light most favorable to the defendants. We also find no misconduct on the part of the defense counsel that amounts to reversible error. We affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justice

Mr. Justice Daniel J. Shea dissents and will file his written dissent at a later time.