No. 97-341

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 22

RICK and ELLEN HARNE,

        Plaintiffs and Appellants,

    v.

WENDELL DEADMOND d/b/a
DEADMOND CONSTRUCTION,

        Defendant and Respondent.

**FILED**

FEB 10 1998

_Ed Smith_
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fifth Judicial District,
                  In and for the County of Jefferson,
                  The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        Jonathan Motl and Deborah Smith; Reynolds, Motl & Sherwood,
        Helena, Montana

    For Respondent:

        Kenneth H. Gray; Jackson & Rice, Helena, Montana

Submitted on Briefs: January 22, 1998

Decided:  February 10, 1998

Filed:

_____
              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Rick and Ellen Harne (Harnes) appeal from the decision of the Fifth Judicial District Court, Jefferson County, resulting in a $7,000 jury verdict in favor of the Harnes as a result of Deadmond Construction's (Deadmond's) negligent construction of their home and judgment awarding attorney fees in the amount of $11,255 to Deadmond pursuant to the Montana Consumer Protection Act (MCPA). We reverse and remand.

## Factual and Procedural Background

¶2 In 1992, the Harnes entered into a written contract with Deadmond for the construction of a new home in Jefferson County. The contract provided that Deadmond would deliver possession of the home to the Harnes by August 24, 1992 and was contingent upon the Harnes' obtaining financing. The Harnes obtained approval of the financing on July 8, 1992 and moved into their substantially complete home on Labor Day weekend. During construction and after taking possession of the home, the Harnes reported several defects in the construction of the home. For example, a glulam beam in the basement was misplaced, a change in the stairway design resulted in less headroom than required by the building code, a living room wall appeared bowed, and the basement flooded as a result of the foundation and drainage design. The Harnes informed Deadmond of the problems and requested that he repair the defects. Deadmond asserted at trial that he responded by ordering the repair of several of the problems. However, the Harnes were unsatisfied with the results and filed suit

2

against Deadmond asserting negligent construction, unfair trade practice in violation of the MCPA, breach of contract, fraud, deceit and punitive damages.

¶3 The matter proceeded to trial and after presenting four days of testimony, counsel began closing arguments. Defense counsel opened his argument by discussing the MCPA. He characterized the statutory scheme as having been passed by the Montana legislature to "get the scammers and the swindlers who are preying upon Montana consumers." Plaintiffs' counsel objected to this argument asserting that it was not an appropriate characterization of the law. The court overruled the objection. Defense counsel concluded his argument by asserting that he was representing Deadmond because Deadmond had built a house for his family fifteen years prior and did a good job. Plaintiffs' counsel objected to defense counsel "testifying" and vouching for the veracity of his client. The District Court overruled the objection, and defense counsel continued to relate his personal experience with Deadmond. After a few minutes, plaintiffs' counsel interrupted the argument again. This time the court instructed defense counsel that he had gone too far, that his time had expired, and that he must conclude his argument.

¶4 The jury returned a verdict in the amount of $7,000 in favor of the Harnes as a result of negligent construction by Deadmond. The jury, however, did not award damages under any of the remaining causes of action, including the MCPA. During post-trial motions, Deadmond requested an award of attorney fees as a result of his successful defense of the MCPA cause of action. The District Court entered an amended judgment awarding

3

Deadmond attorney fees in the amount of $11,255. The Harnes appeal from the amended judgment and the jury verdict. The Harnes present two issues on appeal:

1) Did the improper and prejudicial closing argument by Deadmond's counsel constitute reversible error?

2) Did the District Court err in awarding attorney fees to Deadmond pursuant to the Montana Consumer Protection Act?

We conclude that the first issue is dispositive and thus do not reach the second issue.

## Discussion

¶5 Improper argument requires reversal only when prejudice has resulted which prevented a fair trial. Moralli v. Lake County (1992), 255 Mont. 23, 32, 839 P.2d 1287, 1292 (citing Gunnels v. Hoyt (1981), 194 Mont. 265, 276, 633 P.2d 1187, 1194). The Harnes assert that the comments made by defense counsel during closing argument were so improper and prejudicial as to deprive them of a fair trial. The Harnes base their claim of prejudice on two arguments made by defense counsel.

¶6 First, during jury voir dire, defense counsel, in determining if any of the potential jurors knew him, stated that he served three terms in the Montana House of Representatives, the third year in a leadership position. Defense counsel then was able to tie this legislative experience into his closing argument. He began his argument with a discussion of the Montana Consumer Protection Act. The following discussion took place:

DEFENSE COUNSEL: Let me start by talking about the Consumer Protection Act. . . . This is a law passed by the Montana legislature to get the scammers and the swindlers who are preying upon Montana consumers. Okay? It's passed to get the bait and switchers. It's passed to get those people

4

who are out preying on, on people and trying to get their business inappropriately.

PLAINTIFFS' COUNSEL: Your Honor, that's not what the law says. So I would object on the basis that it's not an appropriate representation of the law.

DEFENSE COUNSEL: I can argue the law, Your Honor.

COURT: Yes, go ahead.

Defense counsel then proceeded to tell the jury about an example he had heard of where:

people were coming through and they were telling elderly people that they were spraying some water coating on their roofs so their roofs wouldn't leak. And they got up there, and they charged these people; and they sprayed just untreated water on the roof. Okay? That's an example of scamming the consumer. . . . And I would just hate to see, if nothing else happens in the jury room, I would hate to see Mr. Deadmond have to have that on his record, that he was convicted of scamming consumers.

The Harnes assert that this portion of the closing argument by defense counsel was improper and prejudicial not only as a mischaracterization of the law, but also because it was clothed in defense counsel's prior representation that he served in the legislature thus lending more credence to his statement as to what the legislature intended.

¶7 As further evidence of the prejudicial effect of these statements by defense counsel, the jury, after it had begun deliberations, sent a note to the court stating "[a]s to Instructions 8, 9, 13, and 14 [the MCPA instructions],we are uncertain what unfair trade practices entail. We need a layman's term answer." The only jury instruction which purported to define unfair trade practice was Instruction No. 8. Instruction No. 8 read as follows:

You are instructed that, under the Montana Consumer Protection and Unfair Trade Practices Act, an unfair or deceptive trade practice occurs when the injury satisfies three tests: It must be substantial; it must not be outweighed by

any counterveiling [sic] benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided.

Although Instruction No. 8 addressed the type and scope of injury that must result from an unfair trade practice, it did not directly state what type of practice constitutes an unfair trade practice. Understandably, the jury was confused as to what exactly, in lay terms, constituted an unfair trade practice. Counsel could not agree on a clarification, so the District Court instructed the jurors that they were required to rely on the instructions given and the court would not instruct them further. The jury was thus left with defense counsel's "scammer and swindler" argument as the only thing approximating a layman's explanation.

¶8 The Harnes also argue that defense counsel obstructed their ability to obtain a fair trial by improperly characterizing the MCPA as a criminal offense by stating that he would hate to see Deadmond have it "on his record, that he was convicted of scamming consumers." The Harnes sought a civil remedy under the MCPA. While Deadmond, if determined to be a violator of the act may have suffered civil penalties pursuant to § 30-14-142, MCA, or potential damage to his business, Deadmond would not "be convicted" or have "a record" as defense counsel implied.

¶9 The second alleged prejudicial statement occurred toward the end of defense counsel's closing argument when the following statements were offered:

> DEFENSE COUNSEL: About 15 years ago I was a young attorney out of law school. I'd hung out my shingle, and I went to work. And I didn't make very much money. And my family was growing bigger than my practice was.

6

PLAINTIFFS' COUNSEL: Objection, Your Honor. This is personal testimony not allowed in closing. He's about to verify the veracity of Mr. Deadmond.

COURT: Oh, go ahead.

DEFENSE COUNSEL: Thank you, Your Honor. And I needed a house. So I went down to a local builder to see if he could build me just a basic square house. And he gave me a price, and it was too much, more than I could afford. Someone told me about Wendell Deadmond. And I looked up Wendell Deadmond and said, "Can you get me a house?" And he drew me a plan and a house that was affordable that I could get into. I'm still living in that house today. I've added onto it. And I've finished the basement, and my family's still growing. But I'm living in that house today 12 years later. I'm his attorney today because I was first his customer those many years ago. Did I have defects in the house? Yeah, I did. I called him up. He sent someone out on several times to address this problem and that problem and this problem --

PLAINTIFFS' COUNSEL: Your Honor --

DEFENSE COUNSEL: --and that problem.

COURT: Yeah, I think you're going a little farther --

PLAINTIFFS' COUNSEL: -- it is testimony.

. . . .

COURT: And your time's up anyway.

The Harnes argue, as they did below, that defense counsel was improperly vouching for the credibility of his client by, in effect, "testifying" to the jury about his own favorable experience with Deadmond. This Court has not had occasion to examine the effect of counsel testifying regarding his own experience with his client; however, the Montana Rules of Professional Conduct clearly forbid this type of action by an officer of the court unless the

7

attorney is acting as a witness. Rule 3.4, adopted to ensure fairness to the opposing party and counsel, states: "A lawyer shall not . . . in trial, . . . assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant . . . ." Rule 3.4, M.R.Prof.Conduct.

¶10 This Court has recognized the importance of Rule 3.4 in the context of a criminal proceeding. In State v. Stringer (1995), 271 Mont. 367, 897 P.2d 1063, we held that it is highly improper for the prosecutor to characterize either the defendant or witnesses as liars or offer personal opinions as to credibility. We recognized that when prosecutors make improper comments in the presence of the jury, "the prosecutor's personal views inject into the case irrelevant and inadmissible matters or a fact not legally proved by the evidence, and add to the probative force of the testimony adduced at the trial the weight of the prosecutors' personal, professional, or official influence." Stringer, 897 P.2d at 1071-72. As a result, we warned, "[t]his Court has been unequivocal in its admonitions to prosecutors to stop improper comment and we have made it clear that we will reverse a case where counsel invades the province of the jury . . . ." Stringer, 897 P.2d at 1072. The same principles apply in the civil context when counsel, using the weight of his personal, professional, or official influence, improperly offers his opinion as to the justness of a cause or the credibility of a witness, particularly when the witness is his own client. Defense counsel's arguments to the jury in

8

the present case violated the clear prohibition of Rule 3.4 and resulted in unfairness to the Harnes.

¶11     Civil cases reviewing misconduct by counsel, including improper statements during closing argument, have focused on whether the misconduct was cured by an instruction from the court. In Gunnels v. Hoyt, defense counsel, during closing arguments, improperly alluded to evidence not in the record. We determined that the subsequent instructions given by the district court prevented any prejudice that may have resulted to the plaintiff. Gunnels, 633 P.2d at 1194. We further concluded that the misconduct of defense counsel did not rise to the level of reversible error. Gunnels, 633 P.2d at 1195. Similarly, in Moralli, we held that misconduct by plaintiff's counsel was "sufficiently cured by the District Court's instruction regarding the comment." Moralli, 839 P.2d at 1293. In this case, however, the District Court did not admonish or otherwise instruct the jury not to consider the improper arguments made by defense counsel. As a result, the jury was left to consider the improper arguments. We conclude that the arguments made by defense counsel were improper, prejudicial, and constitute reversible error. Reversed and remanded for a new trial.

_W. William Leaphart_
Justice

We concur:

_____
Chief Justice

9

_____

_____

_____
Justices